<hr />

ABRAM B. WYCKOFF

*v.*

DANIEL J. NOYES et al.

1. A farm was purchased at a sheriff's sale by one P., with the money of J., at whose direction P. conveyed the farm to F., who gave a mortgage thereon to A. and one to W., and then a deed to J., which was, in fact, a mortgage. Subsequently, F. conveyed the farm to N. J. afterwards bought W.'s mortgage, and had it assigned to and foreclosed by A. It also appeared that J. had other encumbrances on the farm prior to W.'s mortgage.—*Held*, that N. could not have the decree of foreclosure on W.'s mortgage assigned to him, on paying the amount, and be subrogated to the rights of J. thereunder, without also paying J.'s prior encumbrances.

2. Where J. is the real complainant in a foreclosure of a mortgage on lands, and A. the ostensible one, and the county records show a prior mort-

gage on the same lands, standing in the name of A. (although it is proved never to have been delivered), and there is also a deed to J., which is, in fact, a mortgage, and the foreclosure bill makes no reference thereto, a sale of the premises under the decree will not be allowed until after the character and validity of the other encumbrances shall have been determined.

On hearing on petition, order to show cause and depositions.

*Mr. H. C. Pitney,* for petitioner.

*Mr. S. H. Little,* for Abram B. Wyckoff and Jacob F. Wyckoff.

VAN FLEET, V. C.

This is an application by the owner of the equity of redemption of mortgaged premises, or a person claiming to be such owner, for permission to pay off the complainant's decree and to be subrogated to his rights. The following are the facts: In March, 1880, Jacob F. Wyckoff furnished H. C. Pitney, Esq., with money to purchase certain liens existing against a farm in Morris county, called the Stiles farm. The farm was afterwards sold by the sheriff, and Mr. Pitney purchased it and paid the purchase-money with the money previously furnished by Wyckoff, and took the title in his own name. He did so pursuant to Wyckoff's instruction. He held the title to the farm subject to a trust in favor of Wyckoff, which imposed upon him the duty of conveying the farm either to Wyckoff or Wyckoff's nominee. In obedience to Wyckoff's direction, Mr. Pitney, on the 27th of May, 1880, conveyed the farm to Elizabeth Fitzgerald, and she, on the delivery of the deed to her, and pursuant to an arrangement with Wyckoff, executed a bond and mortgage to Abram B. Wyckoff, for $3,000, and another to Catharine M. Williams, for $1,200, and then conveyed the farm, by deed absolute on its face, but intended as a mortgage, to Wyckoff. All these papers were delivered to Jacob F. Wyckoff. Subsequently, and on the 16th of November, 1880, Elizabeth Fitzgerald conveyed the farm to Daniel J. Noyes, the petitioner.

On the 16th of November, 1881, Jacob F. Wyckoff purchased the mortgage made by Elizabeth Fitzgerald to Catharine M. Williams, and procured it to be assigned to Abram B. Wyckoff, and then had the suit brought in which the decree under consideration was made.

The application is resisted. It is first said that the deed from Elizabeth Fitzgerald to the petitioner passed nothing. This claim is made, not on the ground that the prior deed made by Elizabeth Fitzgerald to Jacob F. Wyckoff was intended to have effect as an absolute conveyance, as distinguished from a mortgage, but because the conveyance from Mr. Pitney to Elizabeth Fitzgerald passed the land subject to the trust under which Mr. Pitney held it, and the deed made by Elizabeth Fitzgerald to Jacob F. Wyckoff must, therefore, no matter what the understanding of the parties may have been, have effect as an absolute deed, in order that the trust may be executed. But this view is obviously founded on a mistake. The mortgaged premises were freed from the trust by the conveyance from Mr. Pitney to Miss Fitzgerald. Under the trust, Mr. Pitney had merely a ministerial duty to perform, viz., to convey either to Jacob F. Wyckoff or to his nominee. A conveyance to either would free the land from the trust. The papers make it clear that Miss Fitzgerald was not only Wyckoff's nominee, but his purchaser. The land was conveyed to her by Wyckoff's direction; the deed to her is founded on a consideration of $2,500, which is acknowledged to have been paid; in addition, she incurred personal obligations to Wyckoff's creditors to the extent of $4,200, and then conveyed the land to him as security for the residue of the purchase-money. There can be no doubt that a conveyance to the *cestui que trust* would have freed the land from the trust, and a conveyance to his purchaser, for a consideration moving to him, must, on principle, be equally efficacious to disentangle the land. Though this suit was brought in the name of Abram B. Wyckoff, he is only the ostensible complainant. Jacob F. Wyckoff is the real complainant. His money purchased the mortgage on which the suit is founded—he instituted the suit, and doubtless devised the plan for its conduct. If

subrogation is decreed, the decree will clothe the petitioner with the rights of Jacob F. Wyckoff. Now, it is admitted that Jacob F. Wyckoff holds one or more liens against the mort-gaged premises in addition to the mortgage which the petitioner seeks to control. The petitioner does not offer to pay them. He simply asks to be permitted to pay the decree, and to be subrogated to the complainant's rights under it. I do not think a junior encumbrancer has a right, as a general rule, to be sub-rogated to part of the liens held by a prior encumbrancer, even if they are distinct, and were created at different times, and were originally made to different persons, provided they stand prior to the right or lien of the person seeking subrogation. He must take all or none. And I regard it as certain that the rights of an owner of the equity of redemption are not greater in this respect.

Subrogation is a pure equity ; it is sometimes spoken of as a be-nevolence ; it will never be decreed at the expense of a legal right or when it will work injustice. I can find no instance in which it has been enforced as to one of two liens held by the same creditor, both of which were prior to the lien or right of the person seeking subrogation. In *Saunders* v. *Frost, 5 Pick. 259*, a bill was filed by two of the three persons who held a third mortgage, to redeem the first two and to be subrogated as to them. Frost held the first two mortgages and was in posses-sion of the mortgaged premises under them. He was also en-titled to one-third of the amount secured by the third. Chief-Justice Parker, in stating the terms upon which the complain-ants would be entitled to subrogation, said : " Frost took a common interest with the other two in what remained after sat-isfaction of the first two mortgages, and was equally bound with them to clear off those encumbrances provided he would enjoy any interest under the third mortgage. The two plaintiffs then have a right to treat him as mortgagee of the first mortgage and as assignee of the second, and by tendering what is due, to have possession of the estate without regard to his interest in the third mortgage, which interest may be settled in a future process. If he is content with those two debts, he may receive the whole ;

Wyckoff v. Noyes.

but if he claims indemnity under the third mortgage, he must pay his proportion of the sum necessarily paid to make it valid."

It is manifest, I think, if Frost had been solely entitled to the debt secured by the third mortgage, the court would not have required him to surrender the mortgaged premises until the debt secured by that mortgage was paid, as well as those secured by the two prior ones. *Davis* v. *Winn, 2 Allen 111,* and *Frost* v. *Yonkers Bank, 8 Hun 26,* are in the same line.

Besides, to put the petitioner in the place of Jacob F. Wyckoff as to one of his liens, but compelling him to retain the other, will place the petitioner in a position where he may practice against Wyckoff the very injustice he fears Wyckoff will do to him. But the petitioner offers to promise not to use the decree, in case subrogation is decreed, except as the court may think proper to allow him to use it. This, however, cannot help him. He must stand on the inherent equity of his case. He cannot create equities by promises. If he is not entitled to what he asks, independent of his promises, he cannot establish a right by promises.

In case subrogation is decreed, the substitute is put in all respects in the place of the party to whose rights he is subrogated. *Sheld. on Sub.* § *1.* He may use the decree in the same manner that the person in whose favor it was pronounced might. But it is said the decree is under the control of the court, and after subrogation, the court may allow it to be used or not, as it may deem just. It is unquestionably true that the court may always control its decrees, but the control it may exercise is a judicial control—a control regulated by established rules. After a decree that mortgaged premises shall be sold to pay the mortgage debt, the court cannot arbitrarily say, in the absence of sufficient legal reason, that the decree shall not be enforced, nor is its power at all increased in this respect because it has put some other person in the place of the person in whose favor the decree was originally pronounced.

The person in whose favor the court pronounces a decree, ordinarily has a right to hold it until it is discharged by payment. The court seldom compels him to take his money in order that it may put some other person in his place, except that such course

appears to be necessary to protect the other person's rights, or to save his property, and not then unless substitution can be effected without injury to the person displaced.

As it appears to me, it is just as necessary that Wyckoff should be allowed to retain control of the decree to prevent injustice being done to him, as it is that the petitioner should be subrogated to prevent Wyckoff from using it to the petitioner's disadvantage. In this condition of affairs Wyckoff has a right to stand on his legal rights and hold his original position, and the court has no right to dislodge him.

But this conclusion does not necessarily dispose of the case. I have already remarked that Jacob F. Wyckoff must be regarded as the real complainant. He is, unquestionably, responsible for the manner in which the suit has been conducted. And there can be no doubt that it has been so conducted as to give him an unfair advantage over the petitioner. To allow the mortgaged premises to be sold under the present decree, while the character and amount of the other liens, and which of them are real and which simply pretentious, are undetermined, will be to compel the petitioner to abandon all effort to save his property, and thus possibly compel him to bear a serious loss, or otherwise to engage in a struggle of hazard with Wyckoff, with all the advantages decidedly in favor of Wyckoff, in consequence of his greatly superior knowledge of the real facts of the case. There is a mortgage on record, standing prior to the one on which this suit is founded. It purports to have been made to Abram B. Wyckoff, the ostensible complainant in this cause, to secure $3,000, but the proofs show that it was never delivered, and that Abram B. Wyckoff makes no claim under it. Though Jacob F. Wyckoff was fully cognizant of all the facts, no allusion is made to this mortgage in the bill. It is difficult to account for this omission, for an adjudication settling whether this mortgage was a lien or not would seem to have been quite as important to Wyckoff as to the petitioner, unless we believe that Wyckoff desired to purchase the mortgaged premises himself, and, to that end, thought it was best that as much doubt and uncertainty as possible should be thrown over their actual state

and condition, in order that persons not as well informed as himself might be deterred from competing with him for their purchase. Wyckoff also knew that the instrument under which he claims to hold the mortgaged premises is not, in truth, what it purports to be on its face—it purports to be an absolute deed, but it is, in truth, as he now confesses, a mortgage—yet no mention of this fact is made in the bill. The bill, in this respect, is deceptive.

To allow the mortgaged premises to be sold until it is first determined whether the $3,000 mortgage is a lien or not, and also whether Wyckoff's deed is a deed or a mortgage, and if a mortgage, what is due on it, will be to allow Wyckoff, in the name of another person, to use the power of the court to accomplish an inequitable purpose. This, of course, cannot be permitted. The party seeking relief in a case of this kind is not required to make out a case of surprise, as that term is usually understood, but his right to relief rests on the fact that his adversary is attempting to make an inequitable use of the power of the court.

The proper relief to be given in this case is to set aside the interlocutory and final decrees, and to allow the petitioner to answer. The petitioner may take such an order.